NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CHUNG CHEN, | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 07-CV-1618 (DMC) |
| NEWARK PUBLIC SCHOOLS, et al., | |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Defendants Newark Public Schools, Marion A. Bolden, Candace Wildy, Luna Velez, Amy Sarnoff, Willy Freeman and Elnord. J. Webster (collectively "Defendants"). Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on all counts of the Complaint filed by Chung Chen ("Plaintiff"). No oral argument was heard pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendants' motion is **granted**.

## I. BACKGROUND

Plaintiff commenced this action against his former employer, Newark Public Schools ("NPS"), and a number of NPS employees. Plaintiff, a native of the People's Republic of China, alleges that he was discriminated against on the basis of his race and national origin. Plaintiff asserts claims under Title VII of the Civil Rights Act, 42 U.S.C. § 1981, 42 U.S.C. § 1983, the New Jersey Law Against Discrimination ("NJLAD"), and the New Jersey Civil Rights Act ("NJCRA").

Plaintiff was employed as a substitute teacher by NPS from 2003 until 2005. He was

employed on an at-will per diem basis, and he consistently received teaching assignments over two school years. Plaintiff asserts that the first instance of discrimination against him occurred in June 2004, when he was not allowed to enter the NPS administrative offices. He alleges that his photo was on display for security guards to identify him and prevent him from accessing the NPS facilities. Defendants concede that a member of the security staff obtained a copy of Plaintiff's identification photo, but deny that security personnel were ever instructed to refuse Plaintiff access. Willie Freeman, NPS Director of Security, avers that a guard monitored Plaintiff's visits, as security staff observed that Plaintiff frequently came to the NPS offices without an appointment. On such occasions, he was not permitted to enter the offices.[1] Defendants note that, as a substitute teacher, Plaintiff's employment did not require him unfettered access to the premises.

In September 2004, Plaintiff again began receiving frequent substitute teaching assignments. Plaintiff was accused of being involved in a physical altercation with a student on May 10, 2005. An anonymous complaint pertaining to Plaintiff's conduct was filed with the New Jersey Department of Human Services, Institutional Abuse Investigation Unit ("IAIU"). Such complaints may be filed by anyone, including students, parents or other employees. IAIU records are confidential, and therefore, the identity of the person who filed the complaint was not released.

At some point after the IAIU investigation began, Plaintiff was placed on "inactive" status, and no longer received substitute teaching assignments. The precise date of Plaintiff's termination is not clear. On November 7, 2005, Plaintiff received a letter from the IAIU regarding the results of the investigation. The letter indicated that the claims against Plaintiff regarding physical abuse were unfounded, although there were "some concerns" regarding Plaintiff's actions.

---

[1] For the same reason, Plaintiff was refused access to the offices on two other occasions.

On May 25, 2006, Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission, asserting race and origin-based discrimination against Newark Public Schools. Plaintiff received a Right to Sue, dated January 12, 2007, from the U.S. Department of Justice, Civil Rights Division. Plaintiff commenced this action on April 5, 2007.

## II.  DISCUSSION

### A.  STANDARD FOR SUMMARY JUDGMENT

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing either (1) there is no genuine issue of fact and it must prevail as a matter of law; or (2) that the non-moving party has not shown facts relating to an essential element of the issue for which he bears the burden. Celotex, 477 U.S. at 331. If either showing is made then the burden shifts to the non-moving party, who must demonstrate facts that support each element for which he bears the burden and must establish the existence of genuine issues of material fact. Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, Fed. R. Civ. P. 56(e), but must produce sufficient evidence to support a jury verdict in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). The Court will consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

### B. TITLE VII - EMPLOYMENT DISCRIMINATION CLAIMS[2]

Title VII prohibits an employer from discriminating against an employee based upon his or her race or national origin. Pursuant to McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to assert a claim under Title VII a plaintiff must establish a prima facie case of employment discrimination. To establish a prima facie case of discrimination based on race or national origin, a plaintiff must show (1) that he is a member of a protected class; (2) that he was qualified for the position at issue, (3) he suffered an adverse employment action, (4) "under circumstances giving rise to an inference of discrimination." Sarullo v. U.S. Postal Service, 352 F.3d 789, 797 (3d Cir. 2003); Jones v. Sch. Dist of Phila., 198 F.3d 403, 410-11 (3d Cir. 1999). If a plaintiff is able to establish a prima facie case, the employer must come forward with a legitimate, non-discriminatory reason for the adverse employment action. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254-56 (1981). Finally, if the employer is able to provide a valid reason for its action, the plaintiff must demonstrate that the proffered reason was merely a pretext for unlawful discrimination. See Reeves v. Sanderson Plumbing Products Inc., 530 U.S.133 (2000).

#### 1. Prima Facie Case

To satisfy the first step of a claim under the McDonnell Douglas analysis, Plaintiff must establish a prima facie case of discrimination by showing (1) that he is a member of a protected class,

---

[2] The Court will consider Plaintiff's claims under Title VII, 42 U.S.C. §§ 1981, 1983, NJLAD and NJCRA together, as the McDonnell Douglas burden-shifting framework for analysis applies to all of the claims. See McKenna v. Pacific Rail Service, 32 F.3d 820, 825 n.3 (3d Cir. 1994) (assuming that the McDonnell Douglas framework applies to both Title VII, § 1983, and 1981 discrimination claims); Murphy v. Hous. Auth. & Urban Redevelopment Agency of Atlantic City, 32 F. Supp. 2d 753, 763 (D.N.J. 1999), aff'd, 208 F.3d 206 (3d Cir. 2000) (same, regarding NJLAD claims); Slinger v. State of New Jersey, 2008 U.S. Dist. LEXIS 71723, at *15 (D.N.J. Sept. 4, 2008) (same, regarding NJCRA claims).

(2) that he was qualified for the position at issue, (3) he suffered an adverse employment action, (4) under circumstances giving rise to an inference of discrimination.

First, neither party disputes that Plaintiff is a member of a protected class as he is a racial minority, and a native of China.

Second, Plaintiff was qualified to be a substitute teacher. When evaluating whether a plaintiff is "qualified" for the purposes of a prima facie case, courts must rely upon "objective" factors. See Sempier v. Johnson & Higgins, 45 F.3d 724, 729 (3d Cir. 1995); Aljadir v. Substitute Teacher Serv., 2004 U.S. Dist. LEXIS 19879 at *8 (D. Del. Oct. 5, 2004) (focusing on an objective factor, namely educational achievement, in assessing whether the plaintiff was "qualified" to be a substitute teacher). Plaintiff is sufficiently qualified to be a substitute teacher, as he obtained a New Jersey State substitute teaching certificate, holds a Phd in physics and has taught at the college level.

Third, Plaintiff must show that he suffered an adverse employment action. Plaintiff was placed on inactive status for substitute teaching assignments, and this constitutes an adverse action. See Wilkerson v. New Media Tech. Charter Sch., Inc., 522 F.3d 315, 320 (3d Cir. 2008) ("The failure to renew an employment arrangement, whether at-will or for a limited period of time, is an employment action" under Title VII).[3]

---

[3] To the extent Plaintiff also considers NPS's failure to give him a full-time job an adverse employment action, Plaintiff has entirely failed to substantiate such a claim. Plaintiff simply asserts that he received no response after submitting his credentials to Defendant Wildy after expressing interest in a job. Although the Court notes that formal application to a specific position is not always necessary to establish discriminatory hiring, see EEOC v. Metal Service Co., 892 F.2d 341, 348 (3d Cir. 1990), a plaintiff cannot proceed simply based on the fact that he expressed interest in full-time position and was not offered one. Plaintiff has not demonstrated that such a position even existed or, if one did, that he would be a suitable candidate for it.

Plaintiff also asserts that being prevented from entering the NPS offices on several occasions was an adverse action. As an at-will substitute teacher, however, Plaintiff was not

Fourth, Plaintiff must establish that the adverse employment action occurred "under circumstances giving rise to an inference of discrimination." Sarullo, 352 F.3d at 797; Jones, 198 F.3d at 410-11. To satisfy the fourth prong of his prima facie case, Plaintiff asserts that a number of NPS's actions give rise to an inference of discrimination. For example, Defendants did not permit him to access to the NPS employment offices on multiple occasions. Plaintiff asserts, and Defendants do not deny, that security staff at the NPS offices had Plaintiff's photo on hand to identify Plaintiff and prevent his entry into the building.[4] Plaintiff, however, was employed as an at-will per diem substitute teacher, and therefore did not require access to the NPS offices. Further, in light of Plaintiff's insistence on showing up at the offices without an appointment, it was not unreasonable for the security staff to ensure that Plaintiff had a scheduled appointment before proceeding upstairs. In any case, Plaintiff readily concedes that he consistently received employment as a substitute teacher from 2003-2005. Plaintiff does not even assert that in that two year period a single reference was made to his race or national origin. Nor does Plaintiff show that the NPS

---

required to enter the NPS offices to conduct his job duties, and therefore the restriction of access does not constitute an adverse employment action. See Shaner v. Synthes (USA), 204 F.3d 494, 503 (3d Cir. 2000); Khalil v. Rohm & Haas Co., 05-3396, 2008 U.S. Dist. LEXIS 10169 at *49 (E.D.Pa. Feb. 12, 2008). Even if the Court were to conclude that denial of access to the NPS offices was an adverse action, as it limited Plaintiff's ability to obtain additional employment opportunities, see e.g., Albright v. City of Phila., 399 F. Supp. 2d 575, 587-88 (E.D. Pa. 2005) (denial of overtime opportunities constitute adverse action); Rivers v. Potter, 2007 U.S. Dist. LEXIS 92590, at *19 (D.N.J. Dec. 18, 2007), Plaintiff's claim would still fail as he is unable to establish the fourth prong of a prima facie case of discrimination.

[4] Defendants broadly assert that "[m]any of the discrete actions of alleged discrimination outlined by Dr. Chen are time barred." This is an overstatement. Even if such events are not actionable, they still may be offered as evidence to support Plaintiff's claim of discrimination based upon his termination. See Stewart v. Rutgers State Univ., 120 F.3d 426, 433 (3d Cir. 1997); Lindsey v. N.J. Dep't of Corr., 2007 U.S. Dist. LEXIS 17800 at *30 (D.N.J. Mar. 14, 2007) (unpublished) ("[A]n employee may use prior acts deemed time barred as evidence in support of a timely claim.") (citing AMTRAK v. Morgan, 536 U.S. 101, 113 (2002)).

treated him less favorably than individuals outside of his protected class.

The facts alleged by Plaintiff fail to establish that his termination took place "under circumstances that raise an inference of discriminatory action." Sarullo, 352 F.3d at 797. Plaintiff, accordingly, has not established a prima facie case of discrimination.

### 2. Second and Third Steps of the McDonnell Douglas Analysis

As Plaintiff cannot establish a prima face case of discrimination, his claims must fail, and the Court need not consider the second and third steps of the McDonnell Douglas analysis.[5]

### C.  42 U.S.C. § 1983 - TERMINATION WITHOUT A HEARING

As noted above, Plaintiff's § 1983 employment discrimination claims are subject to the same burden-shifting analysis as the Title VII claims, and are, therefore, not separately addressed here. See McKenna v. Pacific Rail Service, 32 F.3d 820, 825 n.3 (3d Cir. 1994) (assuming that the McDonnell Douglas framework applies to both Title VII and § 1983 discrimination claims).[6] Plaintiff, however, also makes a separate claim under § 1983 premised upon the lack of hearing prior to his dismissal.

---

[5] The Court notes in passing that even if Plaintiff set forth a prima facie case, the mere fact of an IAIU investigation would be a legitimate reason for ending Plaintiff's employment as an at-will substitute teacher. Plaintiff has made no showing that Defendants' justification is pretextual–he merely asserts that Defendants have not pinpointed the precise date of his termination, and that this raises substantial doubts as to their proffered justification. The Court disagrees. Whichever date Plaintiff's termination became official, it was after a complaint was filed against him with the IAIU regarding an alleged altercation with a student. Plaintiff received consistent work from NPS until the alleged incident.

[6] Plaintiff's NJCRA claims are not separately addressed. Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart, Section 1983. See generally Chapman v. New Jersey, Civil No. 08-4130, 2009 U.S. Dist. LEXIS 75720 at *7 (D.N.J. August 25, 2009) (unpublished). The "NJCRA was intended to serve as an analog to [Section 1983]; it was intended to incorporate and integrate seamlessly with existing civil rights jurisprudence." Slinger v. State of New Jersey, 2008 U.S. Dist. LEXIS 71723, at *15 (D.N.J. Sept. 4, 2008) (unpublished) (internal citations omitted).

To maintain a claim under § 1983 based on lack of due process in an employment termination, Plaintiff must first establish a property interest in his employment. Hillegass v. Borough of Emmaus, No. 01-5853, 2003 U.S. Dist. LEXIS 10771, at *22 (E.D. Pa. June 25, 2003). As at-will employees have no entitlement to continued work, there are no property rights in their employment, and there can be no deprivation of said rights. Daniels v. Borough of Spring Lake Heights, 07-4921, 2009 U.S. Dist. LEXIS 85520 at *11-12 (D.N.J. Sept. 18, 2009); see also Gikas v. Wash. Sch. Dist., 328 F.3d 731, 737 (3d Cir. 2003); Goetz v. Windsor Cent. Sch. Dist., 698 F.2d 606, 608-09 (2d Cir. 1983) (no property interest in plaintiff's employment under collective bargaining agreement, since nothing in agreement altered status as at-will employee).[7] Plaintiff cannot establish a property right in his at-will per diem employment, and Defendants' motion for summary judgement is, therefore, granted as to Plaintiff's due process claims.

### III.  CONCLUSION

For the reasons stated, Defendants' Motion for Summary Judgement is **granted**.

 S/ Dennis M.Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:        November   5  , 2009
Original:    Clerk's Office
cc:          All Counsel of Record
             The Honorable Mark Falk, U.S.M.J.
             File

---

[7] Plaintiff has similarly failed to establish that his liberty interest, i.e., the right to "pursue a calling or occupation, and not the right to a specific job," was impinged. Piecknick v. Commonwealth of Penn., 36 F.3d 1250, 1259 (3d Cir. 1994); see Latessa v. New Jersey Racing Comm'n, 113 F.3d 1313, 1318 (3d Cir. 1997).